## BROWN ET AL. V. NACHTRIEB.

6   517
11a 534

1. The granting leave to file an amended complaint and the refusing of a continuance are matters involving the exercise of sound judicial discretion, and may not be assigned for error in this court.
2. When a trial appears to have been conducted in accordance with well established legal principles, the judgment of the court will not be disturbed.

*Appeal from District Court of Chaffee County.*

THE record shows that on June 6, 1881, plaintiff, by leave of the court, filed his amended complaint, in which he alleges " that March 5, 1880, defendants were partners doing business in Chaffee county; that on said day plaintiff entered into a contract with the defendants, by which he agreed to deliver them, in said county, all the sawed lumber required by them in the construction of the extension of the Denver, South Park & Pacific Railroad, from Buena Vista to the east portal of the tunnel above St. Elmo, in said county, at such time and places as the defendants might direct; that defendants agreed to pay him $20 per thousand feet, board measure, in monthly payments in cash, on or before the 20th of each calendar month, upon estimates of engineer in charge of the work; said payment to include all materials furnished during previous month; that in accordance with said contract, he did at such times and places during the year 1880 as the defendants directed, deliver to them ninety-nine thousand nine hundred feet of such lumber, and of the measurement and dimensions and quality as they desired and directed; that defendants received said amount of lumber, and by said contract agreed to pay plaintiff, and he was entitled to receive, the sum of $20 per thousand for the same; that defendants have refused to pay for any portion of said lumber, and they are indebted to the plaintiff in the sum of $1,998 for the said lumber so delivered."

The original contract was filed in support of said complaint; prayer for judgment for $1,998 and costs.

The contract bears date March 5, 1880, and was made at Chalk creek, Colorado. The plaintiff is the party of the first part, and F. O. Brown & Co., of Denver, parties of the second part. The plaintiff agreed to " furnish all the sawed lumber required by said F. O. Brown & Co. in the construction of the extension of the Denver, South

Park & Pacific Railroad, from Buena Vista to the east portal of the tunnel, and to deliver said lumber at the proper opening on the right of way, where it is required to be used, as far as the mouth of Chalk creek, and what is required from there, west, to be delivered at some convenient point on the cars; said material to be delivered promptly at the time required by said F. O. Brown & Co., and to be of red spruce or yellow pine, to be well sawed, and subject to the inspection of the engineer of said railroad company. In consideration of the performance of the above by the said plaintiff, the parties of the second part agreed to pay him $20 per thousand feet, board measure. Payments to be made monthly in cash upon the estimates of the engineer, on or before the 20th of each calendar month, and to include all material delivered during the previous month. Signed and sealed by the plaintiff and by F. O. Brown & Co., by J. M. Brown, Jr., June 6, 1880."

The defendants filed their answer to said amended complaint, in which they "admit they entered into the written contract with plaintiff, and which contract is attached to plaintiff's complaint, but they deny that plaintiff, in accordance with and in pursuance of said contract, delivered said lumber during the year 1880, as he was in duty bound to do and as was by said contract specified; deny that plaintiff delivered to them ninety-nine thousand nine hundred feet of lumber as alleged in his complaint; deny that they received said ninety-nine thousand nine hundred feet of lumber as alleged by plaintiff; deny that they owe the plaintiff $1,998, or any other sum of money. Prayer for judgment and costs."

The bill of exceptions discloses that the defendants, on June 7, 1881, moved for a continuance, supported by the affidavit of A. W. Sindlinger, one of defendants' counsel; affiant alleged "that there is another action pending between the same parties, based upon the same contract that this action is based upon; that the other action was

commenced in the district court of Arapahoe county, about three months prior to the commencement of this action; that the issues in the other action are and were made up before this action was brought; that the title of the other action is F. O. Brown & Co. against Chas. Nachtrieb; that the said Nachtrieb made application in the other suit for a change of venue from Arapahoe county to Chaffee county, which was granted; and that it was granted more than thirty days ago, and that affiant is informed that the papers in said cause have or shortly will be mailed to this court."

The motion for a continuance was overruled by the court and defendants excepted.

By consent of counsel the deposition of James S. Foster was read at the trial on behalf of plaintiff. "Says he is thirty-six years old, a sawyer and engineer at Nathrop, Chaffee county, Colorado; says he knows the plaintiff and defendant Brown; says in 1880 he was running one of plaintiff's saw mills, which was on Maxwell's creek in Chaffee county; under said contract, he sawed between March 15, 1880, and June 15, 1880, about two hundred thousand feet; a portion of said lumber was delivered to the Denver & South Park Railroad Co.; it was mostly bridge timber, sawed by order of Mr. Nachtrieb; sometimes it was ordered by the railroad men, as I understood it. About fifty-seven thousand nine hundred feet was measured by me, and ten thousand and eleven feet measured by Sandford Jacks, and delivered on the line of said railroad between Buena Vista and Hortense. The last of it was delivered June 5, 1880; cannot state the name of any railroad man who ordered lumber. F. O. Brown gave me an order for lumber; cannot say how often; recollect distinctly that he gave me a good going over for not having timber ready that he had previously ordered." Two bills of lumber, marked exhibits A and B, are shown to witness, and he says to the best of his knowledge "they correctly indicate

the lumber that was sawed at the mill under his charge,. and delivered on the line of the railroad between Buena Vista and Hortense."

Cross-examined: "The orders from F. O. Brown to witness were written; witness and Levy made out exhibits A and B; witness called off the account to Levy; the books were kept by witness, William and Sandford Jacks; witness did not deliver this lumber to the railroad company personally, and his reason for saying that it was received by them is because it was shipped to them, and he never heard any difficulty from them; and he settled with plaintiff on the basis of the figures in exhibits A and B."

Re-examined: "I mean, when I said it was shipped to the railroad company, that it was drawn by teams to the line of the railroad; the book I referred to was simply our saw mill accounts."

E. Darling, sworn for plaintiff: "Am a sawyer and seller of lumber on Brown's creek, in Chaffee county; delivered lumber to plaintiff, under his orders, when I was sawing on North Cottonwood, in 1879 and 1880; until April I delivered to the Denver & South Park Railroad, or F. O. Brown & Co., at the bridge, a certain amount of lumber, of which I have a statement made out for March and April, 1880, and plaintiff has it." A paper handed witness, says "it contains the lumber delivered from Dry creek, and not from Cottonwood." Another paper handed witness, says he "delivered on the line of the South Park Railway, by plaintiff's order, twelve thousand four hundred and thirty-nine feet from the Cottonwood mill, and eighteen thousand five hundred and ninety-five feet from Dry creek. It was the same mill, but changed locations, and I was working for plaintiff. It was all plaintiff's lumber, and I delivered it to teamsters, who hauled it to the South Park Railroad."

Cross-examined: "Witness did not write the statement giving the twelve thousand four hundred and thirty-nine

feet, but dictated it; got the amounts from the books in his possession; he kept an account of said lumber; gave the lumber to teamsters; does not know personally that it was delivered to F. O. Brown & Co.; it was hauled to the railroad; it was railroad lumber."

Plaintiff testified: "F. O. Brown came and asked me if I would contract for a certain amount of lumber; told him I would. We agreed upon the price of $20 per thousand feet, to be delivered along the line from Buena Vista to Hortense, or the tunnel, if required. We drew up a contract, which was signed by both parties; commenced delivering on that contract from Cottonwood; Darling was sawyer; also from another mill at Dry creek or Maxwell creek. It was delivered from both mills at one time between Buena Vista and Hortense. Mr. Brown agreed that I should have my pay every month I sawed. After the month I asked for my pay. Brown said he had no estimates; it run on; he said the last estimate he had run behind, and that he had the bridge and everything to contend with; had the masons to pay, which used his money up; asked me if I could not wait for it until next month; told him I guess I could if it was sure to come then; did not get any pay next month; it ran along until June, when Brown wrote me a letter; he always avoided me, and I could not see him after that when he came up from Denver; he posted the railroad people, and would go by me and never get out. I rode several times with him to Buena Vista; he never paid me any money, but promised to send it several times from Denver. Q. You have sued F. O. Brown & Co. under this contract for ninety-nine thousand nine hundred feet of lumber; did you deliver that amount of lumber to them? A. Yes, sir, I sued them in the county court before. Q. Did you deliver that amount, that number of feet of lumber, to F. O. Brown & Co.? A. I delivered that many feet. Q. State whether or not, Mr. Nachtrieb, you delivered this lumber under this contract. A. I did, under this written con-

tract. Q. State whether or not they ever paid you for that lumber. A. They have never paid me one nickel upon it that I ever received. Q. Did they receive this lumber from you? A. They did; yes, sir, from my men. Q. State whether or not you ever made any demand for this money. A. I did, frequently."

Cross-examined: "Q. Did you ever sue the railroad company for this claim? A. No, sir. Q. Did you ever put a lien upon the railroad company for this same property? A. Yes, sir; not on the railroad company, on F. O. Brown & Co. Q. Now didn't you file a lien against the railroad company for this identical property? A. Yes, sir, for the piles; these very identical piles."

Plaintiff's counsel then offered in evidence the contract between plaintiff and defendants, which was objected to by defendants' counsel on the ground that it had not been proven to be properly executed. Plaintiff recalled and shown a paper; says that it is the contract he has spoken about to the jury, with his name to it, and also that Mr. Brown signed it in his presence.

Plaintiff's counsel again offered said paper in evidence, which was objected to by defendants' counsel because it was a part of the complaint in the suit and could not be detached; which objection was overruled by the court, and the contract admitted in evidence.

The foregoing was all the evidence introduced by plaintiff. The defendants then moved for a non-suit for the following reasons: "That the plaintiff sues upon a written contract in which he agrees to furnish a certain amount and a certain kind of lumber, at certain places, to the defendants; that they have not proven that they have furnished that amount of lumber; that they have not proven that they furnished F. O. Brown & Co. any lumber, but that they furnished it to the railroad company. The deposition as well as the evidence of Darling was, that the lumber was delivered to the railroad company, and Nachtrieb himself testified that he placed a lien upon the rail-

road for the identical lumber, and sues F. O. Brown & Co. for the value of the lumber. Nachtrieb stipulates to deliver a certain kind of lumber, and states he will deliver all the lumber these parties want, but has failed to deliver all the lumber demanded by the parties under the contract; then the contract must be void; they have not made out a case under the contract, and have not proven that the railroad company accepted the timber." The motion was overruled by the court, and defendants excepted.

The court gave the following instructions to the jury: "The jury are instructed that if they find from the evidence that plaintiff and defendant made a contract; that, in pursuance of such contract, plaintiff furnished defendant with certain quantity of lumber, for which the defendants have not paid him, that plaintiff was, at the beginning of this suit, entitled to such compensation under and by virtue of the terms of the said contract, they will find for him, and assess his damages at the amount so found to be due." To the giving of the foregoing instruction the defendants excepted. Defendants then asked the court to give the following instruction to the jury: "The court instructs the jury that where a party seeks to recover upon a contract in writing, and upon which his action is based, such party must establish by a preponderance of evidence that he has complied with all the terms on his part, as set out in such contract, and if the jury believe, from the evidence in this case, that the plaintiff relies upon a contract, but has failed to prove each and every part as therein set out, then the jury should find for the defendants." Which instruction the court refused, and the defendants excepted.

The jury returned the following verdict: "We, the jury, find for plaintiff in the case Nachtrieb v. F. O. Brown & Co. in the sum of $1,998. P. P. Harp, foreman."

Defendants, by their counsel, then moved the court to set aside the said verdict of the jury, and grant them a

new trial, for the reason that the evidence and law did not
justify the verdict. The court overruled said motion,
entered judgment, and defendants excepted, and prose-
cute this appeal.

The following errors were assigned in this court:

"1. The court erred in permitting Charles Nachtrieb to
file his amended complaint on the 6th day of June, 1881,
when he was ordered by the court to file it within five
days from May 16, 1881.

"2. The court erred in not granting a continuance to
F. O. Brown & Co. on the 7th day of June, 1881, upon
the affidavit of A. W. Sindlinger, one of their attorneys.

"3. The court erred in not granting the motion for a
non-suit.

"4. The court erred in not granting a new trial.

"5. The verdict of the jury was contrary to law.

"6. The verdict of the jury was contrary to the evi-
dence.

"7. The judgment of the court was contrary to law.

"8. The judgment of the court was contrary to the
evidence.

"9. The court erred in giving the following instruction
to the jury: 'The jury are instructed that, if they find
from the evidence that plaintiff and defendant made a
contract; that, in pursuance of such contract, plaintiff
furnished defendant with certain quantity of lumber, for
which the defendants have not paid him, that plaintiff
was, at the beginning of this suit, entitled to such com-
pensation, under and by virtue of the terms of the said
contract, they will find for him, and assess his damages
at the amount so found to be due.'

"10. The court erred in refusing to give the following
instruction to the jury: 'The court instructs the jury that,
where a party seeks to recover upon a contract in writ-
ing, and upon which his action is based, such party must
establish, by a preponderance of evidence, that he has
complied with all the terms on his part, as set out in such

contract; and if the jury believe, from the evidence in this case, that the plaintiff relies upon a contract, but has failed to prove each and every part as therein set out, then the jury should find for the defendant.'

"11. The court erred in other matters apparent on the face of the record; wherefore appellants pray that said judgment be reversed."

Messrs. HARMAN and ELLIS, for appellants.

Messrs. WESTON and ROWELL, for appellee.

BECK, C. J.    The rulings of the district court complained of, in and by the first and second assignments of error, involve matters of sound judicial discretion with the exercise of which we must decline to interfere.

The other errors assigned are equally without merit. The case appears to have been fairly tried, and submitted to the jury upon a correct statement of the law applicable to the facts before it.

The verdict was warranted by the pleadings and the testimony, and a careful examination of the entire record fails to disclose any legal propositions calling for our consideration.    The trial appears to have been conducted in accordance with well established legal principles, and the judgment will be affirmed.

*Affirmed.*

Mr. Justice HELM took no part in the decision of this cause.

---

GRUNER V. MOORE, COUNTY JUDGE.

1. *Mandamus* will not lie to compel an officer to perform an act which, without the mandate of the court, would not be his legal duty, or would be unlawful for him to perform, and when substantial doubt exists as to the duty, or the right or power of the officer to perform it, the writ will be denied.

2. By the express terms of the statute, the *court* is required to fix the time within which an appeal bond shall be given.