**[No. 1403.]**
GAMBRILL ET AL. v. THE BROWN HOTEL CO.

1. NEGOTIABLE INSTRUMENTS—PLEADING—ACCEPTANCE—DAMAGES.

In an action on a dishonored draft against the drawees, where the complaint alleged a promise to pay by the drawees, it was not necessary to allege an acceptance or agreement to accept. A promise to pay was equivalent to acceptance, and in such case damages need not be alleged; the measure of damages is the amount of the draft and protest fees if any.

2. SAME—PLEADING—CONSIDERATION—HOLDER FOR VALUE.

In an action on a dishonored draft against the drawees, if the drawer was authorized to draw the draft, or if the drawees promised to pay it, it was not necesssary to allege that plaintiff advanced any money to the drawer or that plaintiff was the holder for value; possession was *prima facie* evidence of the latter, and the draft itself, being negotiable commercial paper, imported a consideration.

3. PRINCIPAL AND AGENT—AUTHORITY OF AGENT—EVIDENCE.

The authority of an agent to draw on his principal need not be shown by direct and positive proof of express authority, but may be established by circumstances. Agency, and the scope of the agent's authority may be implied from transactions between the principal and agent, and from a course of dealing by the agent sanctioned by his principal.

4. SAME.

Where an agent, a short time before drawing the draft in question, telegraphed his principals that he had drawn on them, giving amount of drafts, and they answered that they would pay the drafts, but in future they must be less, it was a recognition of the agent's authority to draw in the future as well as the past, the only condition being that in future the amount must be less.

5. SAME.

In an action on a dishonored draft against the drawees, evidence that

the drawer was in the employ of the drawees; that they had furnished him with a book containing blank forms of drafts, with their firm name and address printed upon them; that the draft in dispute was written upon one of these blanks and that the drawees had previously honored and paid other drafts drawn upon them, in favor of the plaintiff, by the drawer, the evidence was sufficient to establish the authority of the agent to draw and the implied promise of the principals to pay.

**6. PLEADING AND PRACTICE—AMENDMENTS.**

Amendments during the course of trial should be liberally allowed, for the furtherance of justice. Such amendments rest largely within the discretion of the trial court, and only an abuse of such discretion will be reviewed. To justify a reversal on this ground, there must be a plain and arbitrary abuse of discretion.

*Appeal from the District Court of Arapahoe County.*

Messrs. ROGERS, CUTHBERT & ELLIS and Mr. FRANK L. WOODWARD, for appellants.

Mr. A. B. SEAMAN and Mr. H. S. SILVERSTEIN, for appellee.

WILSON, J., delivered the opinion of the court.

This was an action brought by the hotel company named as payee in a draft to recover from the drawee. The complaint, after alleging that plaintiff was a corporation, and the partnership of defendants, set forth:

"That said defendants, at all times mentioned in the complaint had in their employ, as their duly authorized agent, one J. R. Murdock, who was authorized to travel and sell goods for said defendants, and among other things, was authorized to draw bills of exchange upon said defendants, which the said defendants agreed to pay:

"That on June 17, 1895, at Denver, said Murdock, by his bill of exchange, required defendants to pay to the order of plaintiff, on demand, the sum of two hundred dollars ($200), copy of which bill of exchange is as follows:

"'$200.                    DENVER, June 17th, 1895.

'On demand, pay to the order of The Brown Hotel Com-

pany, Two Hundred Dollars. Value received, and charge same to account of

"'J. R. MURDOCK.

"'To GEORGE T. GAMBRILL & CO.,
"'37 S. Gay St., Baltimore, Md.'

"That on June 24, 1895, said bill of exchange was presented to said defendants, at their place of business in Baltimore, but that the same was not paid, nor any part thereof; that the said bill of exchange was on the same day protested for nonpayment, and that plaintiff paid protest fees to the sum of two and twenty-seven one-hundredth dollars ($2.27).

"Wherefore plaintiff demands judgment from defendants for the sum of two hundred dollars, and the further sum of two dollars and twenty-seven cents, and for costs."

Defendants answered, denying that Murdock was ever authorized to draw bills of exchange on them, and that defendants ever agreed to pay such bills of exchange; also denying that Murdock was ever in the employ of defendants at a regular stated salary or compensation, but alleging that he received from them a certain commission on sales made by him of defendants' merchandise; that defendants were in no wise responsible or answerable for expenses of any kind incurred by Murdock, and especially denying that they ever agreed with Murdock or with the plaintiff or with any one else to pay any drafts drawn by him. The answer admitted the making of the draft as set forth in the complaint, and that the same was protested for nonpayment, but denied that the defendants were in any manner indebted to Murdock at said time in any amount. Trial was had to the court, and its findings were in favor of plaintiff. On the same day of the hearing of a motion for a new trial, and after an argument therefor, but before any entry of judgment, plaintiff was allowed to amend its complaint *instanter* by interlineation by the insertion of the following words: "That plaintiff paid said draft for two hundred dollars to said Murdock, relying upon the authority of said Murdock to draw the same," im-

mediately preceding the fifth paragraph of the complaint. Judgment was entered in favor of plaintiff, and defendants appeal.

It is urged on behalf of defendants that the complaint did not state facts sufficient to constitute a cause of action, and that the allowance of the amendment was error because it stated a new cause of action. It is insisted that the complaint should have alleged that the defendants agreed to accept the draft, or that they did accept it. Acceptance is merely an agreement to pay, and having alleged this in their complaint, we do not see how the contention of the defendants can be sustained. If they had agreed to pay, whether at the time of the drawing of the draft or prior thereto, no other acceptance, nor even presentation for it, was necessary. It is true, too, as said by counsel, that if there was a breach of the agreement to accept, it would be necessary for plaintiff to allege some damage, and the amount of it. But that is not this case. Here an express promise of payment was alleged. This was equivalent to an acceptance, and the damages in such case need not be alleged. Their measure is the amount expressed in the draft, and protest fees if there be any.

Under this pleading, it was permissible for plaintiff to recover if it could show that Murdock acted as an authorized agent of defendants in drawing the draft, or that defendants promised to pay it. In either case, the measure of the damages for which plaintiff could recover would have been the same. It was not necessary to be alleged in the complaint that the hotel company had advanced any money to Murdock on the draft, nor that it was the holder of the same for value. Possession of the paper was *prima facie* evidence of the latter, and the draft itself being negotiable commercial paper, imported a consideration.

Randolph, Com. Paper, § 562, lays down the settled rule as follows : " Unlike other contracts, the law presumes a consideration in case of commercial paper, and this presumption applies equally to all negotiable bills of exchange, notes, checks, and other instruments. It is therefore unnecessary

either to aver or prove a consideration in the first instance for such an instrument."

As to the authority of Murdock to draw the draft, and the promise of defendants to pay, these were matters of fact provable in like manner as other facts. It was not necessary that there should be direct and positive proof of express authority, but it might be established by circumstances. An agency may arise by implication from acts done by the agent with the consent or acquiescence of the principal; likewise the scope of his authority may be so determined and defined. They may be proven by the transactions that have taken place between the principal and agent. Evidence of a course of dealing by the agent sanctioned by his principal is one of the generally recognized modes of showing the extent of the agency. *Heinz et al. v. The American Natl. Bank of Denver,* 9 Colo. App. 31; *Sharp v. Knox,* 48 Mo. App. 169. In these respects there was sufficient evidence to sustain the findings of the court, and they will not be disturbed.

In reference to the amendment, even conceding that it was necessary to justify a recovery by plaintiff and sustain the judgment in its behalf, which may be doubted, it cannot be said, in our opinion, as claimed by defendants, that it stated a new cause of action. The character of the action having been held to be such as before stated in this opinion, it could not be said to have accomplished any other purpose or effect than perfecting the statement of the original cause of action by the addition of an essential averment. This is not pleading a new cause of action. *Ins. Co. v. Gracey,* 15 Colo. 70; *Tribune Pub. Co. v. Hamill,* 2 Colo. App. 237; *Cooper v. McKeen,* 11 Colo. 41. The issue in the case was whether Murdock had authority from defendants, and whether there was an express agreement by defendants to pay, or such acts and conduct of defendants as to establish such an agreement by implication and inference. The amendment could only have been material, if at all, as a basis for the admission of evidence to the effect that defendants' acts and conduct had been such as to establish the agency or promise

to pay by implication. Proof of this being admissible under the allegations of the complaint as it originally stood, the amendment could be held to be only an additional averment to something already alleged. By the express provisions of the code, and under the general practice of our courts, amendments during the course of a trial should be liberally allowed for the furtherance of justice. Sometimes such amendments are allowed even after verdict. *Seymour v. Fisher*, 16 Colo. 199. It rests largely within the discretion of the trial court, and it has been repeatedly held by this court and by the supreme court that only an abuse of such discretion will be reviewed. To justify a reversal on this ground, there must appear to have been a plain and arbitrary abuse of discretion. *Dyer v. McPhee*, 6 Colo. 174; *Brown v. Nachtrieb*, 6 Colo. 517. In this case it is nowhere suggested, and it does not appear from the pleadings or the evidence or the character of the controversy, that defendants were surprised in the slightest degree, or prejudiced by the allowance of the amendment. There was sufficient evidence to support the findings and the judgment, and no substantial error appearing, the judgment will be affirmed.

*Affirmed.*

### ON PETITION FOR REHEARING.

PER CURIAM. The law as stated by counsel in their brief upon petition for rehearing is unquestionably sound, but it does not cover and is not applicable to the facts of this case, as we view it.

Undoubtedly, as a general proposition, before authority to draw or agreement to pay or accept can operate as an acceptance of a bill not then existing, the agreement must be such as to identify the bill, and it must be drawn and taken by the holder in pursuance of, and reliance upon this authority. This is true of a single bill, but it is evident that the rule does not and cannot apply in its entirety and strictness to a case like that at bar, where it is claimed the drawer was an agent of the drawee, and was invested with general authority

to draw not a single bill only, but such bills as he might deem necessary in the course of his business. Our supreme court has said in *Posey v. Bank*, 24 Colo. 201: " And where a third party advances money upon authority given to draw generally or for a definite sum, the promise to pay, whether expressed in positive terms or implied from the authority, is held to move directly to the third party who has been induced to part with his money upon the faith of such promise."

It is obvious that the character of proof relied upon to establish a general authority to draw, or a special authority to draw a single bill, might and generally would be entirely different. The former could be shown by the previous conduct of the parties, while the same evidence might be wholly inadequate to establish the latter.

On June 4, very shortly preceding the drawing of the draft in question, Murdock wired defendants that he had drawn four drafts upon them to the aggregate amount of $375. On the same day, defendants wired to him in reply: "Will pay drafts named, but must be less in future." Here we think was a clear recognition of the agent's authority to draw in the past and also in the future, the only condition being that the amounts must be less in the future. But, say counsel, there is no evidence that this message was ever seen by plaintiffs, or that they had any knowledge of its contents or existence. Even if such knowledge was first necessary before defendants could be held liable in a case where plaintiffs relied upon the express authority to the agent to draw generally, and not upon specific authority to draw a single bill, which we do not decide, such precedent knowledge or information as to the telegram was not necessary in this instance to bind the defendants. Outside of this message there were attendant circumstances which with the acts and conduct of the defendants were sufficient to show conclusively an implied promise of defendants to pay, upon which the plaintiffs had a right to rely. It was shown by the testimony of a member of the defendant firm that Murdock was in their employ, that they had presented him with a book containing

printed blank forms of drafts with the firm name and address printed upon them; that the draft in dispute was written upon one of these blanks, and that they had previously honored and paid other drafts drawn upon them by Murdock in favor of these plaintiffs. Independent, therefore, of the telegram, we think that the evidence of these circumstances was sufficient to establish the authority of the agent to draw, and the implied promise of defendants to pay the draft. The petition for a rehearing will be denied.