[No. 4985.]
[No. 2515 C. A.]

THE SMITH CANAL OR DITCH COMPANY v. THE COLORADO ICE AND STORAGE COMPANY ET AL.

1. **Water Rights—Appropriation—Prescription.**

Plaintiff constructed its canal across defendant's land for the purpose of carrying water diverted from a natural stream for milling purposes. Upon defendant's land were certain springs the water of which flowed into plaintiff's canal, but no active steps were taken to legally appropriate the water by plaintiff. Defendant acquiesced in the use of the water from the springs by plaintiff when he did not need the water for his own use, but continued to use the water under claim of ownership for domestic, irrigation and other purposes whenever he wished. Held that plaintiff had made no valid appropriation of the water of the springs and acquired no rights by prescription or adverse use whether the water was from natural springs and flowed into plaintiff's canal through natural channels or was percolating water through defendant's land gathered into artificial channels by defendant.

2.  Water Rights—Ditches—Right of Way—Easements.

Where plaintiff under section 48, chapter 18, of the Revised Statutes of 1868, upon a petition asking for the condemnation of a right of way for a ditch condemned a strip of land across defendant's land upon which its ditch was constructed and which divided defendant's land into two parcels, plaintiff acquired merely a right of way or easement in the strip of land, and defendant had a right of way across said condemned strip to conduct water from one part of his tract of land to the other, provided such right was exercised by defendant so as not in any way to interfere with the superior right or easement of plaintiff.

*Appeal from the District Court of Arapahoe County:*
*Hon. F. T. Johnson, Judge.*

Mr. T. J. O'DONNELL, for appellant.

Messrs. BENEDICT & PHELPS, for appellees.

Mr. JUSTICE CAMPBELL delivered the opinion of the court.

In order to carry to its ice plant water from springs situate on defendant Baker's land, the defendant ice company, under an agreement with its codefendant, dug a trench and therein laid a pipe which traversed the lands between the springs and the ice plant, including a strip 40 feet wide which plaintiff had theretofore acquired as a right of way for its canal. To this the plaintiff canal company objected, claiming as its own exclusive property the water of the springs by appropriation, and from long continued use, and the strip of land in fee resulting from a condemnation thereof for ditch purposes, while defendant Baker claimed exclusive ownership of the water as an essential part of his own land, and from use thereof, and an easement or right of way across the 40 foot strip for transporting the same.

Just before the defendant ice company had finished the trench and laid the pipes plaintiff applied

for without notice and received a temporary restraining order against any further attempts to divert these waters or to carry them across its premises. On the final hearing the court found the issues of fact and law for defendants, dissolved the injunction and dismissed the action.

There are two distinct branches of the case: First, which party owns the waters of the springs? Second, has defendant Baker an easement or right of way over the strip of land to conduct the water of the springs?

1. As to the first question, plaintiff's case as made by the complaint, to which its evidence was directed, was that by appropriation and use the waters of natural springs arising upon its own lands which, in well defined natural surface channels, flow into its canal, now belong to it, as such owner; and that defendants were wrongfully trying to divert the same to their own use. Defendants' case, both by pleading and evidence, is that these waters did not constitute springs or natural water courses, but percolated through and by artificial means had been collected into bodies or artificial springs on defendant Baker's own land, which, by artificial surface channels, flowed into plaintiff's canal, and was, with his consent, used by plaintiff only when he did not choose to use the same for his own lawful purposes, which he often did.

The object for which the plaintiff company was formed is not stated in the complaint, though it appears from the record that it constructed a canal across the 40 acre tract of land then owned by defendant Baker's grantor, and thus diverted and carried water from a natural stream (Platte river) and used it as motive power to propel the machinery of a mill. No part of the water thus taken from the river is involved in this case, but only certain water

which, as shown by the uncontradicted evidence, rises on defendant Baker's lands, and therefrom flows, either in a natural or artificial channel, and which is either percolating water proper, as defendants assert, or, as claimed by plaintiff, water flowing in a well defined channel from natural springs down into plaintiff's canal, and at a point below its head gate.

The trial court found, in accordance with the defendants' claim, that these waters originally existed as percolating waters in defendant Baker's land, and by artificial means were developed and collected by him into artificial basins in the semblance of springs, and as such therefore belonged to him as an integral part of his own land, which ownership has never been divested. It also found that, if these waters are diverted from plaintiff's canal by defendants, it would not substantially interfere with the operation of plaintiff's mill, as the supply from the river is, so far as the evidence shows, adequate for that purpose.

The plaintiff insists that these findings are not supported by the evidence, which, it claims, shows that these waters have, ever since its canal was dug, flowed in well defined surface channels from natural springs into its artificial waterway, and by appropriation and use thereof for many years it has acquired title thereto.

If the common law doctrine as to ownership of percolating waters prevails, without qualification, in this state, and if the character of the waters in dispute is the sole test of the rights of the parties, then the decree for defendants must stand, because the trial court's findings, which are binding upon us, were in favor of their contention that these are the percolating waters of their own land artificially collected thereon. Though the judgment of the trial

court for the defendants was based upon this proposition, and both parties apparently proceeded upon the same assumption, we think the decision of the case should be put on another ground. We must not be understood, however, as intimating that under the qualified doctrine pertaining to percolating waters, as recently announced by the supreme court of California in the cases referred to at a later place in the opinion, the defendants would not be entitled to the waters here in dispute. No such questions as were decided in those cases are before us, and for the reasons hereinafter given we should withhold opinion until a case is presented requiring it.

The controversy here is not between owners of the overlying lands the percolating waters beneath which have been intercepted or collected by one to the injury of the other; nor is it a dispute between a senior and a junior appropriator of water from a natural stream, where the senior complains of a diversion of water which, flowing in a well defined channel or by percolation reaches the common source of supply; neither is the question one between the appropriator of water from a natural stream and the owner of land constituting a part of its natural watershed who intercepts, as his own percolating waters, those which otherwise would ultimately reach the channel or supporting bed of the stream. All questions therefore as to whether the water is percolating water or water of a natural spring are immaterial. The law, under the facts, makes these waters, arising as they do on defendant Baker's lands, whether they be artificially collected percolating waters, or the waters of a natural flowing stream or spring, his property, as against the plaintiff in this case, unless the latter has acquired them in some way known to the law. We wish to repeat that plaintiff's rights, if any, are not to be measured by rules which determine

the rights of the three classes just mentioned. Its claim, as stated, is that as a canal and mill owner it is now entitled, as the result of appropriation and adverse use, to waters which originally belonged to another. The very claim that plaintiff is the owner of these waters as the result of an appropriation and adverse use necessarily implies that originally they belonged to another, and not to the plaintiff; for, if the waters are an integral part of lands which the plaintiff owns, they were already his property, and were not, by him, the subject of appropriation or acquisition by use as the property of another. So, then, the question before us, on the answer to which the rights of the parties hinge, is whether the plaintiff has, by appropriation or adverse use, acquired the waters in dispute which originally belonged to Baker. And it is of no consequence here whether they are natural springs arising on the defendant's lands or have been intercepted as percolating waters and artificially collected.

The doctrine of appropriation, as understood in the arid states, may or may not under the facts of the case apply to these waters. That we need not decide; for it is clear that, according to the findings, the plaintiff has not made a valid appropriation. Certainly, it took no affirmative or positive steps with that end in view, and its passive acceptance of the waters that flowed into its canal, which was acquiesced in by the original owner, when he did not wish to use it for purposes of his own, does not constitute a valid appropriation. It is also equally clear that no right by prescription or adverse use has been established, for the findings were that whenever defendant Baker wished to use these waters for his own domestic purposes, for irrigating lands or for filling fish ponds or for sale as merchandise or otherwise, he did so under claim of ownership. We think

the trial court was right, under the evidence, in hold-
ing that defendant Baker had never abandoned these
waters, and that the plaintiff had never acquired
them by appropriation, prescription or adverse use.

In order that there may be no misapprehension,
as to what is decided in this action, it is not inappro-
priate again to say that herein are in nowise
involved the rights of either of the three classes of
claimants above mentioned.  *Bruening v. Dorr,* 23
Colo. 195; *Platte Valley I. Co. v. Buckers Co.,* 25
Colo. 77; *Buckers I. Co. v. Farmers D. Co.,* 31 Colo.
62, and *Wilson v. Ward,* 26 Colo. 39, cited and relied
on by both parties, are not in point, even if the kind
of water here was material.  The law of percolating
waters was not involved in any of them.  The ques-
tions were between senior and junior appropriators
of waters of a natural stream which were attempted
to be withdrawn directly therefrom or from springs
which formed their tributaries.  The law regulating
ownership of percolating waters in the arid states is
now of great, as time passes will be of still greater,
importance, and until a proper case is presented call-
ing for it we decline to announce the rule applicable
to our local conditions.  We make this observation in
view of the fact that after the briefs on this appeal
were in, the supreme court of California in a series
of cases has considered this important question and
established for that jurisdiction the rule that the
right of an owner of land to use water percolating
therein is the right only to a reasonable use thereof
for the benefit and enjoyment of his land.  To what
extent, if at all, the common law doctrine of owner-
ship of percolating water shall be modified, was held
to depend upon the particular facts of the case, but
in any controversy of this nature the general doctrine
*cujus solum* might be, the court said, qualified by the
maxim *sic utere tuo,* etc.—*Katz v. Walkinshaw,* 141

Cal. 116; *McClintock v. Hudson*, 141 Cal. 275; *Cohen v. La Canada L. & W. Co.*, 142 Cal. 437; *Montecito Valley W. Co. v. City of Santa Barbara*, 77 Pac. 1113.

In these California cases the controversy was between owners of overlying lands, one of whom complained that waters naturally percolating in his own soil had been unlawfully intercepted by another owner, or between appropriators of water from a natural stream, or between them and adjacent or riparian land owners, who had intercepted percolating waters which naturally reached and formed part of the stream itself. But here, as already stated, the controversy is between an owner of water, either percolating or from springs and which comes to the surface on his lands, and the owner of an artificial waterway who claims as the direct appropriator and by adverse use thereof.

2. The second specific question for determination is whether defendants have the right to build the trench and lay the pipe line across the strip of land for the purpose of carrying water to the ice plant. This depends upon whether defendant Baker has a right of way across this strip for utilizing the tract of land across which the canal was built. The canal was dug in such a way as to leave part of the tract on either side of it, the larger part lying to the west. The slope of the land was in that general direction, and after the waters were collected into springs east of the canal they would thence naturally flow down to the land on the west were it not for the intervening artificial waterway. Defendant's land, thus cut into two parts, could not be fully or completely utilized unless the water could be carried across this barrier. The right to do this, Baker says, was reserved to him, notwithstanding the strip of land was condemned by plaintiff for the purpose of building its ditch along the same. Baker concedes that

the exercise by him of the right thus to cross must
be so as not to interfere with the superior easement
or right of way acquired by the plaintiff, but in sub-
ordination thereto.  The plaintiff, on the other hand,
insists that it took an absolute fee simple title to this
strip of land, and that defendant has no rights of any
kind whatsoever to or over the same.  He relies upon
a rule or order of the probate court of Arapahoe
county in the territory of Colorado, entered in De-
cember, 1870.  This rule apparently was entered in
a condemnation proceeding brought by the plaintiff
against the then owner of the 40 acre tract.  The law
relating to condemnation of land then in force is sec-
tion 48 of chapter 18 of the Revised Statutes of
1868, page 130.  In substance it provides that when
a petition has been filed by a corporation with the
probate judge for the condemnation of land required
for the purpose of constructing its ditch appraisers
shall be appointed by the judge, and they shall, upon
proper proofs and allegations of the parties inter-
ested, determine the amount of compensation to be
paid for the taking.  When such determination is
made and the result certified to the probate judge and
the amount of the award, if any, properly deposited
to the credit of the parties interested, the court shall
thereupon make and cause to be entered in its
minutes a rule which must contain certain statements
or findings the entry of which operates the same as a
deed of conveyance from the owners to the condemn-
ing corporation.  The statute thus provides:  "Upon
the entry of such rule, the said corporation shall
become seized in fee or shall have the exclusive right,
title and possession of all such lands, real estate or
claims described in said rule, as required to be taken
as aforesaid, during the continuance of the corpora-
tion, and may take possession of and hold and use the
same for the purposes of said  *  *  *  ditch."

Plaintiff's construction of this language is that the title or estate acquired in such proceedings by a ditch company is a fee; while defendant says that the extent of the interest is an easement, or right of way —at all events, that the same is strictly limited to the purposes for which the condemnation is made.

The petition in the condemnation proceeding says that the land sought to be taken was for a right of way for a ditch, and in its complaint here plaintiff states that in such proceedings it procured and obtained *a right of way,* and its estate in this strip is thus designated more than once. Possibly it is not necessary that the rule itself should so provide, and the order here which was entered by the probate court did not purport to specify the title or interest which the petitioner sought to acquire. The language quoted is susceptible of the meaning that two sorts of estates are contemplated—one a fee, the other a mere right of way or easement. It is also susceptible of the meaning that the kind of fee contemplated is not a technical fee; or, by reason of the words following the word "fee," merely an estate or interest which gives to the party seeking to condemn the exclusive right or possession of the strip sought to be held during its continuance as a corporation, only for the purposes of constructing and operating a ditch; if so, an easement or mere right of way would satisfy that purpose. Considering the statute, then, as we should, as passing only such estate or interest as is reasonably necessary to accomplish the purpose in view, and bearing in mind that the petitioner asked only for a right of way, and taking the construction which, in its complaint, the plaintiff itself has made of its own right, we are of opinion that merely a right of way or easement was acquired, and such we hold is the extent of plaintiff's interest in this strip.

In Missouri, under an eminent domain statute authorizing the taking of a "fee simple," the supreme court of that state was of opinion that the phrase was not used in its technical sense, and so, notwithstanding the language employed, decided that nothing more than an easement passed to a railroad company acquiring land for its roadbed under the act.—*Kellogg v. Malin,* 50 Mo. 496. Whether this was a proper construction, we do not say, but that ruling goes farther than we are required to do in holding that only an easement was acquired in the proceeding here.

Such being plaintiff's interest or estate in this strip, we think that, according to the weight of authority, the owner of the land across which the ditch was built—who, as against the owner of the easement, is permitted to put his property to any lawful use for which it is adapted—has, to its complete enjoyment, a right of way across this condemned parcel. This right of Baker, as the owner of land on both sides of the canal, is not incompatible and must not interfere with the superior easement or use of plaintiff. It must be in strict subordination to it. The testimony in this case shows without any serious contradiction that the trench was so built and the pipe laid that it would interfere, in some degree at least, with the superior right of plaintiff to carry water through its canal. It may possibly be true that the interference was so slight and inconsequential that plaintiff might have been relegated to its remedy at law, but since jurisdiction in equity was properly invoked at least upon one branch of the case, the trial court should have retained jurisdiction to settle all the rights of the parties in one action, and it ought not to require the plaintiff to bring another to have determined the relative rights of the parties in and to this strip of land.

The decree of the lower court with respect to the ownership of the waters in dispute is affirmed, and also that part which adjudges that the defendants may have a right of way across plaintiff's right of way for carrying the water of the springs. But in so far as the court held that the trench as dug and the pipe as laid do not materially interfere with the plaintiff's right, its findings and judgment are set aside, and the cause will be remanded to the lower court with instructions to permit the defendants to lay the pipe line across this strip of ground, but in such a way as not to interfere with plaintiff's superior right to carry water in the canal, and to make full use of the strip as a right of way for that purpose.

*Remanded.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE STEELE concur.