## No. 16,319.

### SAFRANEK ET AL. v. TOWN OF LIMON.
(228 P. [2d] 975)

Decided March 5, 1951.

Messrs. Bancroft, Blood & Laws, Mr. Martin J. Harrington, for plaintiffs in error.

Mr. Robert H. Schaper, Messrs. Snyder & Tullis, for defendant in error.

*En Banc.*

Mr. Justice Stone delivered the opinion of the court.

The Town of Limon, being in need of further water supply for domestic purposes, with the consent of respondents Safranek, sunk two wells on unplatted lands belonging to them, and thereby found water which it since has pumped and conveyed by pipe line to the town where it is used to supply the needs of its residents.

Thereafter, being unable to agree as to purchase price, this action was brought to condemn a parcel of 4.18 acres of respondents' lands upon which the wells were located, "together with right to sink wells thereon and remove and pump therefrom any underground and percolating waters located in and under and within said lands." By stipulation the issue of damages and compensation was tried to a jury which was required by the court to fix the value of the water separately from the value of the land. The jury assessed the value of the land taken at $1,000.00, and the value of the water taken at $1,700.00, and found there was no damage to the residue of respondents' lands. Error is here predicated on each of those findings.

It first is urged that the jury did not appraise the value of the land taken upon the evidence, in that, as asserted, the witnesses based their opinions as to value solely upon what the land would be worth to them, even though they were not in the market to purchase, rather than upon the proper basis. No objection is made as to the instruction thereon given by the court. Witnesses called in behalf of petitioner to testify as to value, as appears from the record, included a former banker, and then insurance agent, who had lived at Limon over twenty-nine years, who had knowledge of the value of lands in that vicinity during all that period, of sales of real estate in that locality, and who recently had sold his property of 340 acres of land of similar quality, located between respondents' land and the town, at approximately $30.00 per acre, excluding the value of the improvements thereon, and who valued respondents' land at approximately $50.00 per acre; also a banker who had resided in Limon, except for a short absence, for twenty-five years, who had acquired knowledge of values through his bank acting as escrow agent for buyers and sellers, and who valued respondents' land at approximately $50.00 an acre; also a real-estate broker, thirteen years in the business, who was familiar

with values in that locality, had listings of land in that vicinity and knew of two recent sales therein, and who valued respondents' land at from $75.00 to $100.00 per acre; also a resident who, two years before, had sold approximately three and a half acres across the highway from respondents' land for $200.00; also another witness who owned several farms and had been engaged in the real-estate business in southeastern Colorado for twenty-three years, knew respondents' land, based his opinion on sales made in that area, and valued the land at approximately $100.00 per acre. It is true that these witnesses were not acquainted with the prices received for several other parcels of platted land in that vicinity which, as disclosed by other testimony, had been sold at a higher price per acre than the acreage valuation placed on respondents' unplatted land by these witnesses, but they properly qualified as being competent witnesses; they testified as to proper basis of valuation, and the mere fact that they expressed opinion that the prices reportedly paid for other lots were excessive, merely went to the weight of their testimony, not to its admissibility. There was evidence to sustain the jury's valuation of the land taken.

It next is urged that the jury did not appraise the value of the water taken upon the evidence, in that its finding was at variance with the only testimony given as to such value, to wit, that of three nonresident irrigation engineers. These witnesses testified that the value of 680 gallons of water per minute, which the wells sunk by the Town of Limon on respondents' land were capable of producing, was between $22,000.00 to $30.000.00. Their valuations were based upon the assumption that there was a constant and dependable supply of water to the extent of the capacity of the pumps, and was computed on the basis of the annual rental value of that amount of water elsewhere in Eastern Colorado where such water was available and for which there was a market. No local market was shown, but the witnesses testified that

the residue of respondents' lands could be irrigated successfully by the use of the water.

Without raising other questions immediately occurring, it is elementary that any right of respondents to compensation for this water must be predicated upon their ownership. On this question we are not aided by the briefs. Counsel for the town ignores it, and counsel for respondents are content with the bare statement: "In this State percolating sub-surface waters, not tributary to any stream, are the property of the owner of the land, as at common law." As applied to this case, they are mistaken therein, both as to fact and law.

In making this statement, counsel assume as a fact that these waters are "not tributary to any stream," but the record does not support that assumption. They are referred to as percolating waters, both in the pleadings and briefs. There is no evidence as to topography or underground flow or subsurface formations; as to depth of the wells, or extent of the watershed. From the plat in evidence, it appears that these wells are near Big Sandy Creek, and there are references to respondents' lands as being in the Big Sandy basin. Under our Colorado law, it is the presumption that all ground water so situated finds its way to the stream in the watershed of which it lies, is tributary thereto, and subject to appropriation as part of the waters of the stream. *DeHaas v. Benesch,* 116 Colo. 344, 181 P. (2d) 453. The burden of proof is on one asserting that such ground water is not so tributary, to prove that fact by clear and satisfactory evidence. *Comrie v. Sweet,* 75 Colo. 199, 225 Pac. 214; *Leadville Mine Development Co. v. Anderson,* 91 Colo. 536, 17 P. (2d) 303; *Dalpez v. Nix,* 96 Colo. 540, 45 P. (2d) 176. Here, as we already have noted, there is no evidence whatever to overthrow that presumption; therefore, the water taken by the town must be held to be appurtenant to the stream. We said in *Nevius v. Smith,* 86 Colo. 178, 279 Pac. 44: "The argument of defendants, based on decisions from other states, that percolations

belong to the owner of the soil is unsound in Colorado. Ever since *Comstock v. Ramsay*, 55 Colo. 244, 133 Pac. 1107, we have held that seepage and percolation belong to the river, and have gone so far, though against the judgment of the writer, as to hold that one may not recapture leakage from his own reservoir." In *In re German Ditch & Reservoir Co.*, 56 Colo. 252, 139 Pac. 2, we said, with reference to the natural streams of this state: "The volume of these streams is made up of rains and snowfall on the surface, the springs which issue from the earth, and the water percolating under the surface, which finds its way to the streams running through the watersheds in which it is found." One of our recognized authorities on irrigation law, Mr. A. W. McHendrie, stated in his article, "The Law of Underground Water," vol. 13, No. 1, The Rocky Mountain Law Review, page 1, at page 11, "It is true that in some of the earlier decisions, notably *Breuning v. Dorr* and *Medano Ditch Co. v. Adams*, there seems to have been some doubt as to whether or not a different rule might apply as between underground waters flowing in a well defined subterranean channel and those waters which were termed percolating waters. However, the subsequent decisions adopted and applied the same rule to all underground waters, which if not intercepted, would ultimately reach and become tributary to a natural stream. And as to all such waters the law is definitely settled that the doctrine of priority of appropriation as established by the Colorado Constitution and the subsequent statutes enacted in aid thereof, applied to such waters to the same extent and with the same force and effect as it did to the surface water of the stream: that is, first in time, first in right." See, also, Wells A. Hutchins, "Selected Problems in the Law of Water Rights in the West," United States Government Printing Office, Washington, 1942, 208 et seq.

Had it been established by the record in this case that the water diverted by the town was nontributary

ground water, such as an underground lake, the waters of which are not a part or source of a natural stream, still the above-quoted statement upon which counsel for respondents base their claim of ownership of the water would not be a correct statement of Colorado law. We have long since departed from the English common-law doctrine of ownership of percolating waters by the surface owner, *Nevius v. Smith, supra,* and we would, in such case, be confronted with the question upon which there is an absence of statutory law in Colorado as well as of direct decision by our courts. Whether in such case we should follow the California doctrine of reciprocal rights, developed from its law of riparian rights, or whether we should extend one step further our Colorado doctrine of first in time, first in right, need not now be determined. The question is neither argued nor presented by the facts before us, and in any event its application to the present litigation would be of little comfort to Safraneks. *O'Leary v. Herbert,* 5 Cal. (2d) 416, 55 P. (2d) 834; *Canada v. City of Shawnee,* 179 Okla. 53, 64 P. (2d) 694. Their own witnesses fixed the value of the land, if irrigated, at $150.00 per acre. We here may well follow the example of discretion set long ago in *Smith Canal or D. Co. v. Colorado Ice & S. Co.,* 34 Colo. 485, 82 Pac. 940, by refraining from consideration of that question until it shall properly be before us.

██ ██ The diversion, appropriation and use of the water in the case now before us was by the town. The fact that the water was diverted on respondents' lands is immaterial; the fact that it was diverted by means of a well and pipe line instead of a diversion dam and open ditch is equally immaterial. The essential requirement is present, that the water was taken by the town and appropriated to a beneficial use. The water became the property of the town by virtue of such appropriation, except as its use might conflict with that of prior appropriators, if any, who are not parties to this proceeding. Such being the case, respondents had no title to the

water and were entitled to no compensation for its taking. The court erred in requiring the jury separately to value the water and erred in giving judgment for any value of the water; however, since no cross specifications were filed by the town, we may not interfere with the judgment entered for its taking in the amount awarded by the trial court.

It further is urged that the verdict of the jury, that there were no damages to the remaining land, is contrary to all the evidence. This is based upon the contention as to the land taken, that "with the percolating water beneath it, respondents could have irrigated sixty or more acres of their adjoining valley floor land, which has excellent soil for growing crops by irrigation, and particularly hay." This contention also is based upon the asserted ownership by respondents of the ground water appropriated by the town. As we have seen, they had no ownership therein. They make no complaint that they may not sink wells elsewhere on their property to equal advantage or that their remaining land would in anywise be damaged by the taking of the parcel here involved.

Finally, error is predicated on refusal of the court to give an instruction based on the asserted right of respondents "to use the water percolating under their land, taken by the Town of Limon in this proceeding." No such right existed and the instruction was properly rejected.

The judgment of the trial court is affirmed.

MR. JUSTICE HOLLAND and MR. JUSTICE HILLIARD dissent.