No. 18,065.

IRVING HAYUTIN, ET AL. *v.* LEONARD GIBBONS, ET AL.

(338 P. [2d] 1032)

Decided April 20, 1959.   Rehearing denied June 1, 1959.

Messrs. Hayutin & Hayutin, for plaintiffs in error.

Messrs. Cranston & Arthur, for defendants in error.

*En Banc.*

Mr. Justice Frantz delivered the opinion of the Court.

Leonard Gibbons and Marvin Mandel owned and operated a business in Denver known as Kalamath Builders Supply Company. Irving Hayutin and his wife, Sima, owned an unimproved residential site at 4800 East Orchard Avenue in Arapahoe County, and engaged H. W. Johnson, a contractor, to build a home on the property. Arthur Hayutin is Irving's brother, and together they practice their profession of law in Denver.

Kalamath Builders Supply Company (designated hereinafter the "Company") sued to recover the value of certain merchandise and materials, said to have been delivered to 4800 East Orchard Avenue upon the order of Arthur, acting as the agent of Irving. It is alleged that the wares thus ordered and delivered were worth $600.66, and that Irving, notwithstanding demands for payment, refuses to satisfy the indebtedness accordingly incurred. The complaint concludes with a demand against Irving for $600.66, and in the alternative against Arthur, should the court find that the latter was not the agent of Irving in ordering the materials.

These allegations are denied in Hayutins' answer. In their second defense they aver that Irving and Sima entered into a construction contract with H. W. Johnson; that the contract was filed in Arapahoe County in compliance with C.R.S. '53, 86-3-1, and that payments were made on the contract as required by C.R.S. '53, 86-3-2. Arthur's agency was put in issue in this defense. Finally, the Hayutins relied upon the Statute of Frauds as an exoneration from any obligation.

At a pretrial conference the parties agreed that the materials were delivered to 4800 East Orchard Avenue in Littleton, Colorado, then owned by Irving and Sima; that the reasonable value of the materials was $600.66; and that a copy of the contract between Irving and Sima and H. W. Johnson was filed in the office of the Clerk and Recorder of Arapahoe County, and that it "could be introduced by Defendants as an exhibit."

Upon trial Irving proved that he filed the written contract in accordance with C.R.S. '53, 86-3-1, and that he attempted to make payments under the contract in strict compliance with C.R.S. '53, 86-3-2. He had tendered to the Company its pro rata share of balance due, to-wit: $245.27, together with Johnson's note in the sum of $600.66, upon which would be credited said tendered sum in the event of its acceptance. This was done within the thirty-five-day period after final completion of the construction contract.

From the evidence it appeared that materials were ordered and delivered on four different occasions between June 3 and July 9, 1953. Not having been paid, Gibbons on behalf of the Company made demand on Irving for payment. In connection with the demand for payment, Gibbons testified that he had a conversation with Irving shortly after the first of August, at which time Irving promised that payment would be made by August 10th. Gibbons again talked to Irving on September 15th about payment of the account, and Irving assured him that it would be paid by September 18th. This testimony is contradicted by Irving and inferences may be drawn from other evidence which would be inconsistent with this testimony.

Without indicating the basis of its decision, the trial court entered judgment against Irving and Arthur jointly and severally in the sum of $600.66. They seek to have this adverse judgment reversed.

Three grounds for reversal are presented in their brief. Our resolution of the first ground makes unnecessary

consideration of the other grounds. The first ground is as follows:

"The General Mechanics Lien Law was designed to protect both the mechanic and the owner. It furnishes an additional remedy to the mechanic, and if the owner complies with the recording provisions, limits the liability of the owner to an amount not in excess of price stipulated in the contract."

So much of C.R.S. '53, 86-3-1, is quoted as needs consideration:

" * * * material men, contractors, subcontractors, builders, and all persons of every class * * * furnishing materials to be used in the construction, * * *, either in whole or in part, of any building * * * *shall have a lien upon the property* * * * for which they have furnished materials * * * for the value of such * * * material furnished, whether at the instance of the owner, or of any other person acting by his authority or under him, as agent, contractor, or otherwise, for the * * * materials furnished, * * *, whether * * * furnished * * * at the instance of the owner of the building * * *, or his agent; and every contractor, * * * builder, agent or other person having charge of the construction * * * of any building * * * shall be held to be the agent of the owner for the purposes of this article.

"In case of a contract for the work, between the reputed owner and a contractor, the lien shall extend to the entire contract price, and such contract shall operate *as a lien* in favor of all persons * * * furnishing materials under contract, express or implied, with said contractor, to the extent of the whole contract price * * *. All such contracts shall be in writing when the amount thereunder exceeds five hundred dollars, and shall be subscribed by the parties thereto. The contract, or a memorandum thereof, setting forth the names of all the parties to the contract, a description of the property to be affected thereby, together with a statement of the general character of the work to be done, the

total amount to be paid thereunder, together with the times or stages of the work for making payments, shall be filed by the owner or reputed owner, in the office of the county recorder of the county where the property * * * is situated before the work is commenced. In case such contract is not filed, the * * * materials furnished by all persons before such contract or memorandum is filed, shall be deemed to have been * * * furnished at the personal instance of the owner, and they shall have a *lien for the value thereof.*" (Emphasis supplied.)

■ C.R.S. '53, 86-3-2, relates to the manner of making payments and provides "that at least fifteen per cent of the whole contract price shall be made payable at least thirty-five days after the final completion of the contract." We do not believe that *Armour & Co. v. McPhee and McGinnity Co.,* 85 Colo. 262, 275 Pac. 12, is authority for the proposition that 86-3-1 fixes the limits of personal liability where the owner files the instrument in compliance therewith. The statute confines its operation to the establishment of liens. Language in the cited case, so heavily relied upon by the Hayutins, makes it clear that compliance with the statute placed limitation on the extent of the lien, regardless of the fact that the value of the material is in excess of the allowable lien, and that non-compliance with the statute permits a lien to attach for the full value of the material.

■ It must be remembered that this is a suit for the value of materials sold and delivered; it is not based upon the rights of a lien holder. Such a suit is proper since the statute on liens does not provide an exclusive remedy. *Marean v. Stanley,* 5 Colo. App. 335, 38 Pac. 395; *Brannan Sand & Gravel Co. v. Santa Fe Land & Imp. Co.,* 138 Colo. 314, 332 P. (2d) 892.

■ And the General Mechanics Lien Statute of this state, construed in *Marean v. Stanley,* supra, declares that the remedy provided thereby is cumulative, as the

remedy thus afforded does not prevent "any person from enforcing any other remedy which he otherwise would have had, except as otherwise herein provided." C.R.S. '53, 86-3-24.

It has been decided in a number of cases in this jurisdiction that, notwithstanding a person has no right to a lien, he may pursue his remedy for a money judgment. *Cannon v. Williams,* 14 Colo. 21, 23 Pac. 456; *Finch v. Turner,* 21 Colo. 287, 40 Pac. 565; *Clark Hardware Co. v. Centennial Tunnel Mining Co.,* 22 Colo. App. 174, 123 Pac. 322.

Johnson was an independent contractor. He did not become a statutory agent under the terms of C.R.S. '53, 86-3-1. It is this gap in the testimony concerning agency upon which Irving relies. Irving in effect says that, absent a showing that Johnson was his agent in ordering materials, he is not liable. But an unauthorized act done may become binding by a subsequent ratification.

As we have already indicated, there is evidence in the record showing that Irving made a subsequent promise to pay the amount alleged to be owing. True, this testimony is disputed, and there is other evidence from which inferences may be drawn which belie that promises had been made. We are thus presented with a disputed question of fact, resolved by the trial court adversely to Irving. A case reaching us in such posture calls for the application of the well recognized rule that we will not disturb the trial court's finding based upon evidence supporting said finding even though such evidence is disputed by other evidence.

There being this evidence in the case, we have then a situation presenting ratification of the order of Johnson for materials to be integrated into the home of Irving and Sima. An express promise to pay effects ratification. *Gambrill v. Brown Hotel Co.,* 11 Colo. App. 529, 54 Pac. 1025. Ratification is generally a factual question to be determined by the trier of the facts. Idem; *Cranston v. West Coast Life Ins. Co.,* 72 Ore. 116, 142 Pac. 762.

■ It has been said that ratification "cannot be accurately defined as a legal term. Generically, the word always expresses the same idea, and in legal effect is always the adoption of the act of one who has assumed to be an agent without the grant of an antecedent authority." *Smyth v. Lynch,* 7 Colo. App. 383, 43 Pac. 670. Ratification by a principal of an act of a purported agent is equivalent to an original authority vested in such agent. *Hoosac Mining & Milling Co. v. Donat,* 10 Colo. 529, 16 Pac. 157. Ratification is the adoption and affirmance, either expressly or by implication, by one person of the prior act of another which did not bind him but which was done or professed to be done on his account, whereby the act is given effect as though originally authorized.

For the reasons given, the judgment against Irving is affirmed, and the judgment against Arthur reversed.

MR. JUSTICE SUTTON not participating.