No. 19,843.

MILDRED CLINE, ETC., ET AL., *v.* J. EUGENE WHITTEN, STATE ENGINEER OF COLORADO, ET AL.

(372 P. [2d] 145)

Decided May 21, 1962.   Rehearing denied June 25, 1962.

Mr. FOSTER CLINE, for plaintiffs in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. JOHN B. BARNARD, JR., Assistant, for defendants in error.

*En Banc.*

MR. JUSTICE FRANTZ delivered the opinion of the Court.

ON June 13, 1957, the Clines instituted proceedings in the District Court of Park County, Colorado, against Whitten, the State Engineer of Colorado, his deputies and agents and their successors in office. They charged that the defendants interfered with their right to store non-tributary water from the springs on their land, and requested an order and decree permitting continued storage of such non-tributary water in their reservoir without interference by the defendants.

Defendants filed a motion to dismiss, contending that the relief sought was obtainable only in a proceeding

for the adjudication of rights to the use of water by the regular statutory method. The court granted defendants' motion and dismissed the case. On review this court reversed the judgment, holding that the Clines alleged facts which, if proved, entitled them to injunctive relief against persons interfering with their rights. The case was remanded for trial on the issues presented. *Cline v. Whitten,* 144 Colo. 126, 355 P. (2d) 306.

On October 31, 1960, pursuant to the remand, trial was had in the district court of Park County. On April 14, 1961, the court entered findings of fact, conclusions of law, and a decree favorable to the defendants in this case. Being advised that a motion for a new trial would not be entertained, the Clines are here on writ of error to review the judgment.

The Clines alleged and produced evidence to show that they are the owners of lands located in Sections 2, 11 and 12, Township 9 South, Range 76 West, Park County, Colorado. They further stated that there are natural springs on their property in Section 2, from which there is a small but constant flow of water. From the evidence, it appears that the spring water flows to and down a depression in the land known as Park Gulch to Section 11, located immediately south of Section 2. Testimony for the Clines is that, except during floods and freshets, there is only a little or no water running through Park Gulch above the point where the springs enter it.

In 1945 and 1946, Clines' predecessor in title built a dam on land he owned, namely, the South one-half of the Southeast one-quarter of Section 11. This resulted in the formation of a reservoir along the gulch which collected the water flowing down Park Gulch from the springs originating about one mile to the north in Section 2. The dam and reservoir were also constructed to catch flood waters. Waters so gathered were used by the Clines and their predecessor for the primary purpose of irrigating their land, some 80 to 100 acres located

below and to the east of the reservoir. Clines contend that all of the water so captured can be used on their property, for fish culture, stock water, and for irrigation.

Park Gulch levels out approximately a half-mile below the reservoir and the water goes into a swale-like area upon Clines' land where it disappears into the ground. No one could indicate with certitude what happens to the water after it sinks into the ground.

Below the swale-like area, Park Gulch becomes rather well-defined again, and continues for three or four miles until it reaches Tarryall Creek, a tributary to the South Platte River. The reservoir is located about five miles from Tarryall Creek. Although testimony is in conflict on whether Park Gulch *regularly* carries water below where it percolates into the ground, there is agreement that it does so at least during freshets and flood waters.

On March 23, 1953, Clines' predecessor obtained a storage decree for the reservoir, in which the source of supply for the water in the reservoir was stated to be "Park Gulch, *a tributary to the South Platte River.*" (Emphasis supplied.)

The trial court found as facts that the springs rise on the Clines' land, flow down Park Gulch, and are temporarily stored in their reservoir; that if unimpeded by the reservoir, the waters would flow and spread out upon Clines' land and percolate into the ground; that the nature of the ground — thin soil surface with gravel beneath — is conducive to underground water flow; that this condition, in addition to the considerable volume of water involved and the laws of gravity, led the court to conclude that the water involved reaches and is tributary to Tarryall Creek.

In its conclusions of law, the trial court reiterated the principle of law expounded in *DeHaas v. Benesch,* 116 Colo. 344, 181 P. (2d) 453, to the effect that, as a result of the natural laws of gravity, there is a presumption that all flowing water finds its way to a stream, except

that which is used or evaporated; that the applicable rule of law places the burden of proof of showing such water is not tributary upon him who asserts its non-tributary character; that the Clines have not sustained this burden, and hence the court must of necessity hold that the spring water involved is tributary to Tarryall Creek.

The trial court thereupon decreed as follows:

"It is therefore ordered, adjudged and decreed that the plaintiffs have no right, and are denied the right to store in plaintiffs' reservoir the .30 cubic feet of water per second of time flowing from the two natural springs described in the petition herein.

"And it is further ordered, adjudged and decreed that the state engineer and his lawful representatives shall be and are empowered to regulate the storage of said spring waters in plaintiffs' reservoir."

As grounds for reversal the Clines assert: (1) that Whitten and his subordinates are administrative agents of the state having no proprietary rights in the subject matter "and therefore no right to contest the right of [the Clines] to store and use their spring water"; and (2) that by virtue of C.R.S. '53, 147-2-2 they have a "right to use their spring water which is capable of being used on their land."

The resolution of both grounds asserted for reversal depends upon whether the water in question is tributary to Tarryall Creek. The trial court recognized this as the fundamental question in the case, and in resolving that it was tributary could only hold as it did. The Clines admit that, if the water is tributary to the stream, it is subject to existing priorities on the stream.

In their testimony the Clines showed that, except during flood waters and freshets, Park Gulch carries no water except the constant flow furnished by the springs on their land. This flow is estimated at .30 cubic feet per second or 194,400 gallons per day. Their evidence also shows that when the spring waters reach the swale-

like ground below where the reservoir was built, it sinks into the ground and disappears. They contend that the waters are dispersed and spread over their land and hence are used by them. It follows, they say, that such waters never reach Tarryall Creek.

It appears to be undisputed that the land into which the water sinks and disappears has a thin soil layer under which there is loose gravel. According to Whitten, such condition conduces to quick absorption of the water and produces an underground flow. It is undisputed that the springs produce 194,400 gallons per day. That Tarryall Creek is at a lower elevation than the reservoir is unquestioned.

The foregoing facts elicited expert opinion that the water from the springs reaches Tarryall Creek. In addition to this evidence, the court had before it the reservoir decree which recited "Park Gulch, a tributary to the South Platte River."

There was thus presented to the trial court a fact question, and it resolved the fact question against the Clines. It is not our function to disturb the findings of a trial court based upon disputed facts and upon inferences properly deducible from facts. *Hayutin v. Gibbons,* 139 Colo. 262, 338 P. (2d) 1032.

Moreover, it is presumed that all flowing water finds its way to a stream. *DeHaas v. Benesch,* supra; *Safranek v. Limon,* 123 Colo. 330, 228 P. (2d) 975. This presumption has such force in this state that it casts upon the person who would show that the water is not tributary the burden of so proving. *Cresson Co. v. Whitten,* 139 Colo. 273, 338 P. (2d) 278. Quite properly, the trial court here held that the Clines had not met this burden; that, in view of the evidence presented, the presumption remained intact and unimpaired.

The Clines rely upon C.R.S. '53, 147-2-2, for authorization to impound and use waters arising from springs on their land. It reads as follows:

"All ditches constructed for the purpose of utilizing

the waste, seepage or spring waters of the state, shall be governed by the same laws relating to priority of right as those ditches constructed for the purpose of utilizing the water of running streams; provided, that the person upon whose lands the seepage or spring waters first arise, shall have the prior right to such waters if capable of being used upon his lands."

It is the contention of the Clines that the "statute of Colorado gives plaintiffs the absolute right to use spring water rising on their property if it can be used on their property."

But, once such waters have been established as tributary to a stream (as was found here by the trial court in considering the evidence), they cannot be interrupted in their course and diverted from the stream; they belong to the creek, which in turn belongs to the people of the state by Article 16, Section 5 of the Constitution. *Nevius v. Smith,* 86 Colo. 178, 279 Pac. 44. The case cited involved seepage and spring water.

■ The decree for the reservoir entered in favor of the Clines was not and did not purport to be an adjudication of water appropriated and put to beneficial use. Diversion of water and its storage in a reservoir, even though sanctioned by decree, is not an appropriation of water. *Highland Co. v. Union Co.,* 53 Colo. 483, 127 Pac. 1025. On the other hand, the finding in the storage decree that Park Gulch is tributary to the South Platte River was an operative fact properly considered by the trial court.

Satisfied that the court under the evidence presented in this case could determine that the waters of the springs are tributary to Tarryall Creek, we believe the trial court properly held that the State Engineer and his subordinates could and should perform their statutory duty of controlling and regulating waters flowing in the Platte River, Tarryall Creek, and Park Gulch in compliance with adjudicated appropriations. In Colorado the State Engineer has the statutory duty of "super-

vising control over the public waters of the state . . ." C.R.S. '53, 147-11-3. He has "general charge over the work of the irrigation division engineers and district water commissioners . . ." C.R.S. '53, 147-11-5.

The water commissioners in turn have the "duty to be actively employed on the line of the streams in [their] water district[s], supervising and directing the putting in of headgates, wastegates, keeping the stream clear of unnecessary dams or other obstructions, and such other duties as pertain to a guard of the public streams in [their] water district[s]." C.R.S. '53, 147-15-2. These water commissioners are also directed as follows:

"It shall be the duty of said water commissioners to divide the water in the natural streams of their district among the several ditches taking water from the same, according to the prior rights of each respectively; in whole or in part to shut and fasten, or cause to be shut and fastened, by order given to any sworn assistant, sheriff or constable of the county in which the head of such ditch is situated, the headgates of any ditch heading in any of the natural streams of the district, which, in a time of a scarcity of water, shall not be entitled to water by reason of the priority of the rights of others below them on the same stream."

In view of the foregoing statutory authority to administer the public waters of the state, we hold that this state official and those working under him were acting within their authority in regulating the waters stored in the Cline reservoir and that, whenever it was made to appear that the Cline reservoir interfered with the use by prior appropriators of such water, their authority extended to requiring that such waters be released for application to proper beneficial use by such appropriators. *Ortiz v. Hansen*, 35 Colo. 100, 83 Pac. 964.

The judgment is affirmed.

MR. JUSTICE MOORE and MR. JUSTICE SUTTON not participating.