## No. 21365.

WILLIAM W. RANSON AND LOIS M. RANSON *v.* CITY OF
BOULDER AND PUBLIC SERVICE COMPANY OF COLORADO.
(424 P.2d 122)

Decided January 30, 1967.     Rehearing denied March 6, 1967.

DAVID B. RICHESON, for plaintiff in error.

NEIL C. KING, City Attorney, MARVIN B. WOOLF, Assistant, PETER C. DIETZE, for defendant in error City of Boulder.

No appearance for defendant in error Public Service Company of Colorado.

*En Banc.*

Mr. Justice McWilliams delivered the opinion of the Court.

William and Lois Ranson commenced a supplemental adjudication in Water District 6 by filing a petition wherein they sought an adjudication of water rights in and to a certain spring located on property owned by them. In this petition the Ransons asserted that they "owned" and had the right to the use of "any and all waters" coming from the spring on their property.

In the trial court the city of Boulder and the Public Service Company of Colorado appeared in this particular proceeding, and each filed a protest wherein each claimed that the spring water in question was tributary to a stream on which they had certain priority rights.

Upon hearing, the trial court found that the water from this spring on the Ranson's property was tributary to an unnamed intermittent stream, which was in turn tributary to Coal Creek, and that the latter creek was tributary to Boulder Creek. Accordingly, the trial court rejected Ranson's claim to the use of *all* of the water flowing from this spring, though the trial court did award the Ransons Priority No. 78, Third Series, for household domestic use and for the irrigation of less than ten acres, with a priority date of 1913. By writ of error the Ransons now seek reversal of the decree thus entered by the trial court.

It is the position of the Ransons in this court that, by virtue of C.R.S. '53, 147-2-2, they are entitled as a matter of right to the use of *all* of the water coming from the spring on their property. The city of Boulder contends, however, that the aforementioned statute applies *if, and only if*, there first be a determination that the spring water in question is "non-tributary" in nature, and that in this regard the trial court determined that the water from this particular spring was tributary, as

opposed to non-tributary. *Cline v. Whitten*, 150 Colo. 179, 372 P.2d 145.

The Ransons, by way of rejoinder, do not challenge, as such, the rationale of *Cline v. Whitten, supra,* but do assert that the finding of the trial court that the water from the spring here in question is tributary was clearly erroneous, as a matter of law. Hence, the issue here to be resolved narrows to a determination as to whether there is evidence to support this particular finding of the trial court.

■ In Colorado, flowing water is presumed to find its way to a stream, and the burden of proving otherwise rests upon the party claiming that such water is not tributary. *Cline v. Whitten, supra.* Upon the trial of this matter, the Ransons called as their witness a geologist who expressed the quite definite opinion that the water from this spring was *not* tributary to any stream. And he detailed the reasons for his opinion.

The city of Boulder, on the other hand, called as its witness a civil engineer, with extensive experience in the field of hydrology, who testified that in his opinion the water from this spring was tributary, first, to an unnamed intermittent stream, and then in turn to Coal Creek and Boulder Creek. This witness also detailed the reasons for his professional opinion.

■ It was on this general state of the record, then, that the trial court held that the spring water here in question was tributary in nature. In our view, though there is admittedly evidence to the contrary, there is nevertheless evidence to support the determination thus made by the trial court. In such circumstance, this court is not at liberty to upset the finding of the trial court. *Cline v. Whitten, supra.*

The judgment is therefore affirmed.

MR. JUSTICE SUTTON, formerly concurring, now dissenting:

On reconsideration of this matter on the Petition for

Rehearing I have concluded that it is error to affirm the trial court's finding that the spring in question is tributary to Coal Creek.

The basis of our affirmance in this matter was upon the premise that there was some proper evidence to support the trial court's determination that the spring is tributary in nature, and in such cases we do not second guess trial courts. I agree with the rule, but on reexamination of the question presented, I do not agree with its application here.

In the instant case the petitioner calls our attention to the fact that the City's hydrologist witness Hallenbeck, whose testimony both the trial court and we relied on, only said that he had examined the ranch and spring involved in a "cursory fashion" and that the waters from the spring (which admittedly did not flow naturally on the surface at all) would *"probably* reach Coal Creek," and he *"assumes* that the water flows generally in the direction of Coal Creek," whereas the geologist witness Walter, called by Petitioner, had been a practicing geologist since 1920 with wide experience who, though he had spent about the same amount of time on this particular examination as Hallenbeck, also previously had studied the area and terrain for approximately three months total time prior thereto. (Emphasis added.) He testified *without* qualification that the waters could not reach Coal Creek. Walter's specific testimony in this regard was:

"* * * I examined the said spring and found the water coming through a crevice in the granite, basement rocks, flowing approximately five gallons per minute, and this fissure extending along a fault zone, turning north 70 east and dipping at an almost vertical angle of 85 degrees."

He then testified that a hole had been dug to a depth of about 4½ feet to expose the spring, with the last 1½ feet being in granite. In answer to the question

as to what would have happened if the spring had not been dug, he testified:

"* * * with the pressure it had, not rising to the top of the granite, probably it would be just a small sunken swamp, no water whatsoever rising to the surface, which would drain along the spring which was north 10 east along fault fissures."

Then in answer to the question: "Now, Mr. Walter, had that spring not been dug out, would it have ever reached Coal Creek?" he replied:

"As surface flow, no. As the surrounding topography there before excavation shows, it was a depression with an 8-foot high bank topography all the way around above where the water is coming out of the spring at the present time, and the way it was at that time it would be enough to hold the water, I mean confined in those fissures along the fault zone, turning in that direction (indicating), which would take it out northeast somewhere. It would be underground flow, not surface flow."

And to the question "And the flow, had it gone underground, would it have ever reached Coal Creek?" he replied: "No, it would have been intercepted by a fault line or impermeable beds." He next testified that those beds were approximately 6000 feet thick.

The undisputed fact also is that the draw in question, below the spring, widened out so there is no creek channel as such before the slope reaches Coal Creek.

Walter's testimony is buttressed by official U.S. Government Department of the Interior Geological Survey Map N 3952. 5-W 10515/7.5 dated 1942 for the "Eldorado Springs, Colo." quadrangle upon which he had drawn the fault line. The line shows a crossing of the surface drainage area in question. The printed map itself shows the drainage basin, which is some distance below the spring, to have an intermittent flow of water as a natural surface drainage area.

Mr. Walter's conclusion based upon his study of the terrain, that there is no evidence that this spring's waters ever reached Coal Creek, was concurred in by witness Watson who was also a civil engineer and surveyor who had examined the property.

In addition, it is a known geological fact, of which I believe we should take judicial notice, that structures do exist on the earth's surface that at times trap surface or spring waters and effectively prevent them from being tributary to any further outward flow. On a grand scale, the Caspian, Salton and Dead Seas are in that category and obviously smaller similar geologic structures and even pockets exist for various reasons including blockage caused by faulting in the earth's surface. It is a well known fact that not all earth-held waters percolate through aquifers. Here the evidence is that this was water allowed to escape from its granite prison fissure only after the owner of the land removed the overburden to release the weight upon it. C.R.S. 1963, 148-2-2 expressly provides that the owner of land upon which a spring, such as this, arises has the prior right thereto. — I would apply that statute here.

With the material evidence in the posture as here presented, where the trial court has relied at best on a *probability* suggested by one expert who is not a geologist, as opposed to the *unqualified opposite* propounded by a different expert who is a well qualified geologist whose conclusion is supported by a third expert, I believe that, as a matter of law, the trial court was in error. See *Vanadium Corp. v. Sargent*, 134 Colo. 555, 307 P.2d 454 (1957) to the effect that "opinion must fall before the actual fact" where it is in conflict with the physical facts. I would, therefore, reverse and direct the trial court to enter an amended decree awarding the Ransons the entire use of and first priority to the spring waters in question.

MR. JUSTICE DAY, formerly concurring, states that he joins in this dissent.

ADDENDUM:

McWILLIAMS, J.

In view of the dissent authored by Mr. Justice Sutton and concurred in by Mr. Justice Day, which dissent was filed at the time of the denial of the petition for rehearing, I feel constrained to make a few additional remarks.

The Caspian, Salton and Dead Seas notwithstanding, the rule *in Colorado* is that *all* flowing water is *presumed* to find its way to a stream and is therefore *presumed* to be tributary in nature. Furthermore, in connection with this presumption, the *burden of proof* rests upon a party claiming that certain water is *not* tributary, to prove that it is not tributary by clear and satisfactory evidence. *Cline v. Whitten, supra; Cresson Co. v. Whitten,* 139 Colo. 273, 338 P.2d 278; *Safranek v. Limon,* 123 Colo. 330, 228 P.2d 975; and *DeHaas v. Benesch,* 116 Colo. 344, 181 P.2d 453.

My basic quarrel with my dissenting brethren is that, in my view, they would have us abandon our traditional role of serving as a reviewing court, and would apparently convert us into a "super" fact-finding body. Such would most certainly do violence to what has heretofore been our generally accepted function and area of operation.

Our function, as I see it, is not to determine whether the spring water arising on the Ranson property is, or is not, tributary in nature. This is the function of the trial court. The trial court has heard the several witnesses and has made its factual determination. At this stage of the proceedings, then, our only function is to determine whether there is evidence to support the determination thus made by the trial court. And in my judgment there is such supporting evidence.

As already noted, at the very outset there is a presumption that the spring water *is* tributary. And on that same side of the scales must be added the testimony of the hydrologist Hollenbeck.

On the other side of the scales should then be placed the testimony of the geologist Walters, together with certain bits of testimony tending to support his opinion on the matter. All of which adds up, in my mind, to a disputed issue of fact.

It is in this setting that my dissenting brethren would step into a fact-finding role and, in effect, *tell* the trier of the facts that he *should* have believed the witness Walters in preference to the witness Hollenbeck, and that he *should* have determined that Walter's testimony was of such stature and standing as to *overcome* the presumption here involved. For us to do that would mean that we are getting into an area of operation where we have no right to be. It would be purely and simply a case of substituting our judgment for that of the trial court. It is for this reason that, regardless of my personal opinion on the merits of the matter, I am of the firm view that the judgment should be affirmed. In our understandable desire to "do justice," the inclination to set a trial court "straight" on disputed issues of fact may be great, but the inclination should be resisted.