722 P.2d 363

**Watts E. COLLIER and Lucille Collier, husband and wife, Plaintiffs-Appellants,**

**v.**

**ARIZONA DEPARTMENT OF WATER RESOURCES; Curtis Ritter and Jane Doe Ritter, husband and wife; Indian Rock Ranches, Inc., an Arizona corporation; L.K. Lindahl and Jane Doe Lindahl, husband and wife, dba Muleshoe Ranch; W.C. Satathite and Jane Doe Satathite, husband and wife, Defendants-Appellees.**

**No. 1 CA–CIV 7671.**

Court of Appeals of Arizona, Division 1, Department C.

March 6, 1986.

Reconsideration Denied April 7, 1986.

Review Denied July 8, 1986.

Walraven & Roberts by Richard Walraven, Paul L. Roberts, Prescott, for plaintiffs-appellants.

Toci, Murphy & Beck by Michael R. Murphy, Prescott, for defendants-appellees Indian Rock Ranches, Inc. and Satathites.

Wolfinger & Lutey, Ltd. by S.D. Lutey, Prescott, for defendants-appellees L.K. Lindahl, Jane Doe Lindahl, dba Muleshoe Ranch.

Kathleen Ferris, Chief Counsel, M. James Callahan, Deputy Counsel, Scot C. Stirling, Chief Litigator, Phoenix, for defendant-appellee Arizona Dept. of Water Resources.

## OPINION

KLEINSCHMIDT, Judge.

This appeal is from a judgment of the Superior Court of Yavapai County affirming a decision of the Arizona Department of Water Resources denying a permit to appropriate public water. We affirm.

The appellants, Watts E. Collier and Lucille Collier, seek to appropriate water flowing from a spring located on their property. The spring, which they named Miracle Spring, first surfaced in 1979 in what was once the bed of Kirkland Creek. At some time in the past, the course of Kirkland Creek was changed so that the waters of the creek now bypass a section of its original bed. It is in this dry, former bed of the creek that Miracle Spring formed.

Part of Kirkland Creek flows intermittently, depending upon runoff from precipitation, but three reaches of the creek have a perennial flow. Nearly the entire flow of the creek has been appropriated. Except for the Arizona Department of Water Resources, the appellees are all ranchers who have appropriated the water of the creek. All points of diversion of the water used by the appellees are downstream from the point where Miracle Spring surfaced.

Watts Collier first noticed Miracle Spring in the summer of 1979 when he was driving across the old channel of Kirkland Creek. He bulldozed a pad across the channel to prevent bogging down in mud when he drove across it. As the waters rose behind the pad, he continued to raise the pad until it formed a dam nine feet high. The Colliers then applied for a permit to appropriate the water from the spring for irrigation purposes.

The downstream appropriators of the water of Kirkland Creek protested the application. A hearing was held before the Department of Water Resources at which it was proven that if the water from Miracle Spring were not impounded it would flow down the old bed of Kirkland Creek and join the creek. There was expert testimony that the percolating groundwater which rises to become Miracle Spring has always contributed to the surface flow of Kirkland Creek. Finally, the protesters showed that the flow of Kirkland Creek is sometimes insufficient to supply the quantity of water they are entitled to under their appropriative rights.

The hearing officer denied the Colliers' application on the grounds that the spring water, if not impounded, would flow into Kirkland Creek and that the ranchers would be adversely affected by the proposed appropriation. The trial court affirmed. All parties generally accept the facts as recited above, but do not agree on the applicable law.

The downstream ranchers' argument is based on the subsurface hydrological connection between Miracle Spring and Kirkland Creek. They cite case law from other states for the proposition that all water which feeds into an appropriated stream is a part of the water appropriated. *Ranson v. City of Boulder*, 161 Colo. 478, 424 P.2d 122 (1967); *Martiny v. Wells*, 91 Idaho 215, 419 P.2d 470 (1966); *Woodward v. Perkins*, 116 Mont. 46, 147 P.2d 1016 (1944). These cases do not resolve the issue, however, because they were all decided in jurisdictions in which percolating groundwater is appropriable.

In Arizona percolating water is not public property and thus is not appropriable. The right to such water belongs to the owner of the overlying land, and such owner's use of it is limited only by what is reasonable, *Bristor v. Cheatham*, 75 Ariz. 227, 255 P.2d 173 (1953), and by the groundwater code. *See also* A.R.S. § 45–131, which defines appropriable water as water flowing in streams or in definite underground channels and omits any reference to percolating groundwater. At oral argument it was conceded that if the Colliers wanted to pump from beneath their own land the same amount of percolating

water that flows naturally from Miracle Spring, they would be free to do so notwithstanding that this pumping would reduce the flow of Kirkland Creek.

The Department of Water Resources poses a different argument. It urges that because the water of Miracle Spring would, if unimpeded, flow naturally into Kirkland Creek, it is a tributary of that creek and thus subject to the rights of those who have appropriated the water of the creek. They cite a number of cases including *Cline v. Whitten*, 150 Colo. 179, 372 P.2d 145 (1962); *Martiny v. Wells*, 91 Idaho 215, 419 P.2d 470 (1966), and *Beaverhead Canal Co. v. Dillon Electric Light & Power Co.*, 34 Mont. 135, 85 P. 880 (1906) which support the principle that prior rights to a stream extend to that stream's tributaries.

The *Beaverhead Canal* case is so factually similar to this case that at first glance it appears to resolve the entire question. But *Beaverhead Canal* is not dispositive because it assumes that under Montana law groundwater is appropriable. *See Woodward v. Perkins*, 116 Mont. at 53, 147 P.2d at 1019. Since that is not the law in Arizona, the authority of *Beaverhead Canal* is undercut.

For their part, the Colliers premise their argument on several settled points of Arizona law: any person may appropriate unappropriated water for any of a number of reasons, including irrigation, A.R.S. § 45–141(A); the first person appropriating the water shall have the better right, *id.;* surface springs are among those waters which are appropriable, A.R.S. § 45–131(A); groundwater is presumed to be percolating, *Neal v. Hunt*, 112 Ariz. 307, 311–12, 541 P.2d 559, 563–64 (1975); and percolating groundwater is not appropriable, *Bristor*, 75 Ariz. at 234, 255 P.2d at 177.

From these points, the Colliers fashion the following argument: The groundwater which now has formed Miracle Spring may have always contributed to the flow of Kirkland Creek. This water, however, must be presumed to have been percolating and thus could not be a part of the appropriated water of Kirkland Creek. Now

that this groundwater has broken through the surface, it has become a new, appropriable source of water. The Colliers' dam has prevented these surface waters from reaching Kirkland Creek, and thus the water of Miracle Spring has never become a tributary of the creek. Since this water has never reached the creek in an appropriable form, the Colliers claim the right to appropriate it now.

This case, however, is settled by the terms of A.R.S. § 45–143(A), which reads:

> The director [of the Department of Water Resources] shall approve applications made in proper form for the appropriation of water for a beneficial use, *but when the application or the proposed use conflicts with vested rights, ... the application shall be rejected.* (Emphasis added).

The Colliers' argument explains why the water of Miracle Spring has not yet been appropriated, and why it is now in an appropriable form, but does not explain why the Colliers' application should be granted when their proposed appropriation would conflict with prior vested rights.

While the term "vested rights" as it is used in A.R.S. § 45–143(A) is not specifically defined in the statutes, a definition sufficient to resolve this dispute may be discerned from the water rights registration system enacted by our legislature. Under that registration system, all parties who claim to have established a valid appropriation or who seek to establish a new appropriation are required to submit an application or a registration statement as to the rights they claim to the Department of Water Resources. A.R.S. §§ 45–142, 45–181. It may be assumed that the information required by these legislatively prescribed forms must be descriptive of the rights that vest upon perfection of the appropriation. If not, the registration system would be superfluous.

■ The legislature requires that these registration and application forms contain: 1) the name of the water course involved; 2) the nature and amount of the proposed

**198**

or claimed use; 3) the location of the point of diversion; and 4) the purpose of the use. A.R.S. §§ 45–142, 45–182. Applying this basic definition to the current dispute, we find that the protesters have vested rights to the use of specified amounts of water from Kirkland Creek drawn from established points of diversion for various agricultural and domestic uses. The evidence supports the conclusion that the flow of Kirkland Creek has at times been insufficient to meet present appropriations and that the impoundment of Miracle Spring would conflict with these prior vested rights. The hearing officer's finding will not be overturned absent a finding that the agency acted arbitrarily or capriciously. *J.W. Hancock Enterprises, Inc. v. Registrar of Contractors*, 126 Ariz. 511, 513, 617 P.2d 19, 21 (1980).

Arizona water law has developed into a bifurcated system in which percolating groundwater is regulated under a set of laws completely distinct from the laws regulating surface water. While this bifurcation provides a workable legal system, it often ignores the scientific reality that groundwater and surface water are often connected. The Colliers also ask us to ignore this reality. Our legislature, however, has tied the approval of new appropriations to their *effect* on existing appropriations. Thus, we are able to look beyond the legal fiction and see that the water the Colliers seek to appropriate is water which has historically fed an appropriated stream. We therefore hold that because the Colliers are seeking to appropriate water which has in the past contributed to Kirkland Creek in an unappropriable form and which now would flow naturally in an appropriable form into the creek above the point where the prior appropriators divert their water, their application to appropriate water was correctly denied on the ground that the appropriation would interfere with prior vested rights.

The ruling by the Department of Water Resources and the trial court denying the Colliers a permit to appropriate the waters of Miracle Spring is affirmed.

CORCORAN and EUBANK, JJ., concur.