No. 11,752.

NEVIUS, ET AL. v. SMITH.

Decided February 27, 1928. Opinion adhered to June 24, 1929.

Messrs. HILLYER & HILLYER, for plaintiffs in error.

Messrs. GORDON & GORDON, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE DENISON delivered the opinion of the court.

SMITH, plaintiff below, secured an injunction against plaintiffs in error, defendants below, restraining them from interfering with his use of five second feet of water which he claimed to have appropriated. Their claim is that the appropriation is from mere seepage which arises on their land and therefore is not subject to appropriation by others. The plaintiff on the other hand claims that the waters which he appropriated were of a stream

flowing through defendant's lands, not mere seepage but what he denominates a "seepage stream" and that his rights have been adjudicated to him by a decree in an action to which defendants' grantor was a party.

Whatever and however sacred their rights may have been, if the court has adjudicated plaintiff's rights superior, the adjudication must stand.

The water in question arises on the S½ of S. W. ¼ of section 18, and N. W. ¼ of section 19, township 22 S. range 45 'W. in' Bent county, which, at the time of the general adjudication of water rights by virtue of which plaintiff claims, were owned by parties to these proceedings who are, of course, bound by them; they, therefore, cannot deny that plaintiff has a valid appropriation for the water which he claims.

It appears, however, by the complaint and by the adjudication decrees, that plaintiff's right is to "percolating, seepage and spring waters," and defendants claim that under C. L. §1637, such appropriations are always subject to a paramount right of the owner of the land on which the waters arise, to use them when occasion requires, and that the adjudications must be regarded as made subject to such right even though such owner made no such claim at the time of the decree of adjudication and even though such right was not reserved therein. Whether defendants' position is right is the first and main question we have to meet. C. L. section 1637 is as follows: "Sec. 20. That all ditches now constructed or hereafter to be constructed for the purpose of utilizing the waste, seepage or spring waters of the state, shall be governed by the same laws relating to priority of right as those ditches constructed for the purpose of utilizing the water of running streams; *Provided,* That the person upon whose lands the seepage or spring waters first arise, shall have the prior right to such waters if capable of being used upon his lands." L. '89, p. 215, §1; R. S. '08, §3177.

■■ Clearly this means that any one may appropriate seepage and spring water, but what does "prior right" mean? Does it mean prior right to appropriate or prior right to use without appropriation, or perpetual right to appropriate notwithstanding previous appropriations even though the same may be followed by adjudication? If an owner of land suffers another to appropriate his spring can he reclaim it at any time without compensation? "Those using the water for domestic purposes shall have the preference over those claiming for any other purpose." Colo. Const. art. XVI, sec. 61; but we held that clause to give no right to a domestic user over an appropriator for another purpose without either the latter's consent or condemnation (*Sterling v. Pawnee Co.*, 42 Colo. 421, 94 Pac. 339), and that therefore the city of Sterling must condemn, if they wished to appropriate the springs that fed the Pawnee company's ditches. The ground of this decision was that the appropriated right was property and could not be taken constitutionally except by consent or condemnation. The analogy with the present case is plain. Plaintiff has appropriated and defendants' grantors have acquiesced even to judgment; plaintiff thus acquired property which cannot be taken from him without compensation. If it be claimed that the only property he got was subject to defendants' prior right, the answer is that the same situation existed in Sterling v. Pawnee company. It there might have been equally well said that the agricultural right of the Pawnee company was subject to the domestic use of Sterling, but this court rejected that construction in positive terms, p. 426.

■ The argument of defendants, based on decisions from other states, that percolations belong to the owner of the soil is unsound in Colorado. Ever since *Comstock v. Ramsay*, 55 Colo. 244, 133 Pac. 1107, we have held that seepage and percolation belong to the river, and have gone so far, though against the judgment of the writer,

as to hold that one may not recapture leakage from his own reservoir. *Rio Grande Co. v. Wagon Wheel Gap Co.*, 68 Colo. 437, 191 Pac. 129. See, also, *Durkee Ditch Co. v. Means*, 63 Colo. 6, 164 Pac. 503; *Trowell Co. v. Bijou Dist.*, 65 Colo. 202, 176 Pac. 292; *Fort Morgan Co. v. McCune*, 71 Colo. 256, 206 Pac. 393; and since it belongs to the river it belongs to the people of the state by article 16, section 5 of her Constitution.

These cases refute any claim that percolation or seepage of any water belongs to the land owner, and fix the principle that any appropriation of it must be subject to all prior appropriations from the river, which seems in accord with the main part of the above quoted statute, but are contrary to the proviso thereof.

If it be claimed that we cannot establish a rule contrary to a statute, we answer that it is true, but since the Constitution gives the river water to the people, subject to appropriation, and since the seepage belongs to the river it belongs to the people by force of the Constitution and the statute cannot transfer it and it must be subject to appropriations as river water.

It follows that the judgment must be, and it is, affirmed.

### On Rehearing.

*En Banc.*

Mr. Justice Burke.

The foregoing opinion was announced February 27, 1928. On the 13th of the following month a petition for rehearing was filed. Six days later that petition was granted. May 7, 1928, the cause was re-argued orally. It now appeared that while the opinion rested upon the assumption that the seepage in question "belongs to the river" such assumption was one of fact, the finding of which the record left in doubt. Accordingly on June 11, 1928, we remanded the cause with directions to the trial

court to find "whether the water in question ever reached the river, and if not whether it would reach the river if not diverted but left to itself." Complying therewith that court in a supplemental finding which, on October 30, 1928, was made a part of this record, specifically held "That the water in question did reach the river; and that said water, if not diverted but left to itself, would reach the river."

Further briefs were thereupon filed by the parties and the cause finally submitted May 23, last.

It thus now clearly appears that the water here in question is part of the natural stream. See authorities cited in the foregoing opinion.

The petition for rehearing was based upon the contrary assumption. We quote therefrom: "It would appear that the court has acted upon the theory that such waters not only belonged to a stream, but were the waters of a natural stream which was a tributary to the Arkansas River." * * * * * Nowhere has any such claim ever been made, except in the briefs filed by defendant in error and in the oral argument before this court." No other question, raised by the record, is now argued.

In the light of this amended finding we have no doubt of the correctness of our original opinion. We should here observe, however, that what is therein said about the refutation of "any claim that percolation or seepage of any water belongs to the land owner," and the apparent conflict between section 1637, C. L. 1921, and the rule here followed must be confined to the facts under consideration and limited strictly to such waters as "belong to the stream." So interpreted that opinion is adhered to and the judgment affirmed.